UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JONAS GERONIMO-DOMINGUEZ,

                              Plaintiff,

- vs -

VILLAGE OF ALBION,
VILLAGE OF ALBION POLICE DEPARTMENT,
OFFICER JEFF GIFALDI, in his individual capacity,
OFFICER JOHN DOE #1, in his individual capacity,
UNITED STATES CUSTOMS AND BORDER PROTECTION,
AGENT TODD WATKINS, in his individual capacity,
AGENT WILFREDO BORRERO, in his individual capacity,
AGENT JOHN DOE #2, in his individual capacity,
UNITED STATES IMMIGRATION AND CUSTOMS
ENFORCEMENT,
JOHN DOE #3, in his individual capacity, and
JOHN DOE #4, in his individual capacity,

                              Defendants.

**COMPLAINT**

Civil No. _____

## PRELIMINARY STATEMENT

Plaintiff Jonas Geronimo-Dominguez is a Hispanic male and a citizen of Mexico. At all relevant times Plaintiff was lawfully present in the United States of America ("United States"). Plaintiff entered the United States in or around July 2001 and was a victim of human trafficking and forced labor. Plaintiff reported these crimes to the United States Department of Justice ("DOJ") and was granted public interest parole on January 14, 2002. Plaintiff was interviewed by federal immigration agents and DOJ agents. Pursuant to those interviews, the United States Department of Health and Human Services certified Plaintiff as a victim of human trafficking on February 5, 2002. The DOJ then granted Plaintiff continued presence in the United States so that he could assist in the investigation and prosecution of human traffickers. The DOJ's investigation led to the June 2002 indictment of the human traffickers that victimized Plaintiff,

10529846.4

and ultimately to their guilty pleas in December 2004. See United States v. Garcia, No. 02-CR-110-S (W.D.N.Y. 2004).

On January 23, 2004, the Department of Homeland Security, Customs and Immigration Services ("CIS"), issued Plaintiff a T-visa in recognition of his help in the prosecution of the above referenced human traffickers. T-visas are available to human trafficking victims who assist in DOJ investigations and would suffer severe hardship if removed from the United States. The duration of a T-visa is three years, after which time the human trafficking victim is eligible to adjust his or her status and become a legal permanent resident of the United States and begin the pathway to citizenship. Plaintiff, by his attorneys, Nixon Peabody LLP, as for his Complaint, alleges the following upon information and belief:

## PARTIES

1. Plaintiff is a twenty-eight year-old Hispanic male who emigrated from Mexico. Plaintiff is a migratory farm worker employed at Gardeau Crest Farms, LLC in Perry, New York. At all relevant times, Plaintiff was a legal resident of the United States pursuant to a T-Visa issued to Plaintiff by the CIS on January 23, 2004.

2. Defendant Village of Albion ("Village") is a municipal corporation, duly organized and existing under the laws of the State of New York.

3. Defendant Village of Albion Police Department ("Police Department") is the Village's law enforcement branch.

4. At all relevant times, Defendant Officer Jeff Gifaldi ("Gifaldi") was a Police Department officer, and a resident of the State of New York.

5. At all relevant times, Defendant John Doe #1 was a Police Department officer responsible for training and Supervising Gifaldi, and a resident of the State of New York.

10529846.4

6. Defendant United States Customs and Border Protection ("CBP") is a federal agency duly organized and existing under the laws of the United States. CBP is a branch of the United States Department of Homeland Security and is charged with securing our borders.

7. At all relevant times, Defendant Todd Watkins ("Watkins") was a CBP agent stationed in the State of New York, and a resident of the State of New York.

8. At all relevant times, Defendant Wilfredo Borrero ("Borrero") was a CBP agent stationed in the State of New York, and a resident of the State of New York.

9. At all relevant times, Defendant John Doe #2 was a CBP agent responsible for training and supervising Watkins and Borrero, and a resident of the State of New York.

10. Defendant Untied States Immigration and Customs Enforcement ("ICE") is a federal agency duly organized and existing under the laws of the United States. ICE is a branch of the United States Department of Homeland Security and is charged with enforcing immigration laws.

11. At all relevant times, Defendant John Doe #3 was an ICE agent stationed at the ICE Detention Facility in Batavia, New York ("Batavia Facility"), and a resident of the State of New York.

12. At all relevant times, Defendant John Doe #4 was an ICE agent responsible for training and supervising John Doe #3, and a resident of the State of New York.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343, 1367 (2005).

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

## UNLAWFUL ARREST

15. On October 20, 2006, Plaintiff ate dinner at a Mexican restaurant with two of his friends.

16. After finishing his meal, Plaintiff left the restaurant in his car.

17. Shortly after leaving the restaurant, Plaintiff was pulled over by Gifaldi.

18. Gifaldi approached Plaintiff's car and told Plaintiff that he was asked to pull over because he had nearly hit another car.

19. There were no other cars in the area when Gifaldi pulled Plaintiff over.

20. Gifaldi pulled Plaintiff over because of his race and/or national origin.

21. Gifaldi asked Plaintiff to produce his driver's license or other identification.

22. Plaintiff promptly showed Gifaldi his T-Visa and valid employment authorization card, with photo ID, issued by CIS.

23. Despite being shown clear proof that Plaintiff was lawfully present in the United States pursuant to a valid T-visa and CIS issued employment authorization card, Gifaldi called Watkins, telling Plaintiff that he needed Watkins for "translation services."

24. Gifaldi never asked Watkins to translate anything.

25. Gifaldi's true purpose in calling Watkins was to discuss and plan the unlawful arrest of Plaintiff because of his race and/or national origin.

26. Watkins and Gifaldi agreed to detain Plaintiff without attempting to verify the authenticity of Plaintiff's T-Visa and CIS issued employment authorization card.

27. Without any more questioning or investigation, Gifaldi ordered Plaintiff to exit his car, handcuffed him, and placed him under arrest.

28. Gifaldi then put Plaintiff in the back seat of his patrol car and had Plaintiff's car

10529846.4

towed.

29. Gifaldi transported Plaintiff to the Police Department and placed them in an interrogation room.

30. Gifaldi's sole reason for stopping, detaining, and arresting Plaintiff was animus towards Plaintiff because of his race and/or national origin.

31. As a result of Plaintiff's unlawful arrest he suffered severe emotional distress, public scorn, embarrassment, and spent five days behind bars for no valid reason.

## **DETENTION AND INTERROGATION**

32. Watkins then arrived at the Police Department and began interrogating Plaintiff as to how he entered the United States.

33. Plaintiff told Watkins that he did not understand the question, and would need translation services.

34. Watkins then became very angry with Plaintiff and left the interrogation room without asking any other questions.

35. Shortly thereafter, Plaintiff and his co-workers were transported to a CBP facility in Rochester, New York.

36. Upon arriving at the Rochester CBP facility, Watkins continued interrogating Plaintiff.

37. Borrero, whom Watkins referred to as "Captain," then arrived and joined Watkins in Plaintiff's interrogation.

38. During Plaintiff's interrogation, Watkins and Borrero asked Plaintiff how he obtained his T-Visa.

39. Plaintiff truthfully told Watkins and Borrero that he was granted a T-Visa by the

United States government for agreeing to testify against human traffickers who eventually pled guilty to the trafficking charges.

40. Watkins and Borrero then told Plaintiff that if the trafficker pled guilty, Plaintiff was no longer "needed" and should return to Mexico, and that Watkins and Borrero were going to make sure that Plaintiff was sent back to Mexico.

41. Watkins and Borrero then informed Plaintiff that he would be sent to the Batavia Facility where they would order his deportation, and that there was nothing Plaintiff could do to prevent it.

42. Watkins and Borrero then asked Plaintiff who had helped him obtain his T-Visa. Plaintiff responded that his lawyer helped him apply for his T-visa.

43. As Watkins and Borrero continued with their interrogation, Plaintiff pleaded with them to speak with Kevin Ryan, a federal immigration agent who was in charge of investigating the trafficking case in which Plaintiff agreed to testify.

44. Agent Ryan knew about Plaintiff's involvement in the trafficking case as a victim-witness, and had submitted papers in support of Plaintiff's T-visa application.

45. Watkins and Borrero refused to contact Plaintiff's attorney or Agent Ryan.

46. Plaintiff's interrogation continued from 10:00 p.m. on October 20, 2006, until 3:00 a.m. on October 21, 2006.

47. When Watkins and Borrero were finally finished interrogating Plaintiff they locked him in a cell by himself.

48. As a result of Plaintiff's unlawful detention and interrogation he suffered severe emotional distress, public scorn, embarrassment, and spent five days behind bars for no valid reason.

10529846.4

## INCARCERATION IN THE BATAVIA FACILITY

49. Plaintiff was then transported in handcuffs and shackles, with a chain around his waist, to the Batavia Facility.

50. Plaintiff arrived at the Batavia Facility around 6:00 a.m. on October 21, 2006.

51. Watkins and Borrero placed Plaintiff under the control of John Doe #3.

52. Despite not being given a judicial order to incarcerate Plaintiff, John Doe #3 incarcerated Plaintiff against his will.

53. John Doe #3 incarcerated Plaintiff at the Batavia Facility until October 25, 2006.

54. At not point during his incarceration at the Batavia Facility was Plaintiff interrogated or allowed to call his lawyer or family.

55. On October 25, 2006, John Doe #3 transported Plaintiff to a bus terminal where he was released without a hearing or explanation as to why he was detained for five days.

56. As a result of Plaintiff's unlawful incarceration he suffered severe emotional distress, public scorn, embarrassment, and spent five days behind bars for no valid reason.

## FAILURE TO PROVIDE ANTI-DISCRIMINATION TRAINING

57. Plaintiff's racially discriminatory arrest by the Village, the Police Department, and Gifaldi was committed under color of the laws of the State of New York.

58. The Village has a custom and practice of deliberately failing to train its employees on how to properly verify whether a person is lawfully present in the United States. As a result, the Town and its employees regularly discriminate against Hispanics who are lawfully present in the United States by denying them their Constitutional rights, including due process of law.

59. The Police Department and John Doe #1 have a custom and practice of

deliberately failing to train their employees on how to properly verify whether a person is lawfully present in the United States. As a result, the Police Department and its employees regularly discriminate against Hispanics who are lawfully present in the United States by denying them their Constitutional rights, including due process.

60. CBP and John Doe #2 have a custom and practice of deliberately failing to train CBP employees on how to properly verify whether a person is lawfully present in the United States. As a result, CBP and its employees regularly discriminate against Hispanics who are lawfully present in the United States by denying them their Constitutional rights, including due process of law.

61. ICE and John Doe #4 have a custom and practice of deliberately failing to train ICE employees on how to properly verify whether a person is lawfully present in the United States. As a result, the Police Department and its employees regularly discriminate against Hispanics who are lawfully present in the United States by denying them their Constitutional rights, including due process.

### FIRST CLAIM FOR RELIEF: FALSE IMPRISONMENT

62. Plaintiff realleges the allegations contained in Paragraphs 1 though 61.

63. Gifaldi, without a warrant or reasonable cause, intentionally arrested Plaintiff under the false pretense of an immigration violation.

64. Plaintiff was conscious at the time of his unlawful arrest and suffered severe emotional distress as a result.

65. Plaintiff did not consent to his unlawful arrest.

66. Gifaldi had no reason to believe that Plaintiff was an illegal immigrant because Plaintiff showed Gifaldi his valid T-Visa and CIS issued employment authorization card.

10529846.4

67. Following his unlawful arrest, Gifaldi turned Plaintiff over to Watkins and Borrero.

68. Watkins and Borrero, without a warrant or reasonable cause, intentionally detained and interrogated Plaintiff under the false pretense of an immigration violation.

69. Plaintiff was conscious at the time of his unlawful detention and interrogation, and suffered severe emotional distress as a result.

70. Plaintiff did not consent to his unlawful detention and interrogation.

71. Watkins and Borrero had no reason to detain and interrogate Plaintiff because Plaintiff showed them his valid T-Visa and CIS issued employment authorization card, explained to them how he had obtained them, and told them that they could verify his story by telephoning his attorney or Agent Ryan.

72. Following his unlawful detention and interrogation, Watkins and Borrero turned Plaintiff over to John Doe #3.

73. John Doe #3, without authorization to do so and without reasonable cause, intentionally incarcerated Plaintiff at the Batavia Facility.

74. Plaintiff was conscious at the time of his unlawful incarceration at the Batavia Facility and suffered severe emotional distress as a result.

75. Plaintiff did not consent to his unlawful incarceration at the Batavia Facility.

76. John Doe #3 had no reason to incarcerate Plaintiff because John Doe #3 had no reason to believe that Plaintiff had committed a crime or that there was reasonable cause to incarcerate Plaintiff at the Batavia Facility.

77. As a direct result of Plaintiff's false imprisonment by Gifaldi, Watkins, Borrero, and John Doe #3 he suffered severe emotional distress, public scorn, embarrassment, and spent

five days behind bars for no valid reason.

## SECOND CLAIM FOR RELIEF:
## VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983)

78. Plaintiff realleges the allegations contained in Paragraphs 1 though 77.

79. Plaintiff has the Constitutional right to be free from unlawful arrest and not be deprived of his liberty without due process of law (collectively "Civil Rights"). U.S. Const. amend. IV, XIV.

80. As a member of the Police Department, Gifaldi unlawfully arrested Plaintiff under color of the law of the State of New York.

81. Collectively, the Village and the Police Department have a custom and pattern of harassing Hispanics. The Village and the Police Department deliberately fail to train their employees, such as Gifaldi, on how to properly verify whether a person is lawfully present in the United States without violating the person's Civil Rights.

82. Gifaldi violated Plaintiff's Civil Rights by unlawfully arresting Plaintiff, and turning him over to Watkins and Borrero, without just cause and without a warrant.

83. The Village and the Police Department violated Plaintiff's Civil Rights by failing to adequately train Gifaldi, and by showing deliberate indifference to the proper training of their employees in the Police Department.

84. The unlawful actions of the Village, the Police Department, and Gifaldi violated Plaintiff's Civil Rights and directly caused Plaintiff to suffer severe emotional distress, public scorn, embarrassment, and spend five days behind bars for no valid reason.

## THIRD CLAIM FOR RELIEF:
## VIOLATION OF CIVIL RIGHTS

85. Plaintiff realleges the allegations contained in Paragraphs 1 though 84.

86. Plaintiff has the Constitutional right to be free from unlawful arrest and not be

10529846.4

deprived of his liberty without due process of law (collectively "Civil Rights").  U.S. Const. amend. IV, XIV.

87. Watkins and Borrero, CBP employees, violated Plaintiff's Civil Rights by unlawfully detaining and interrogating Plaintiff, and then turning him over to ICE for incarceration without just cause and without a warrant.

88. John Doe #3, an ICE employee, violated Plaintiff's Civil Rights by unlawfully incarcerating Plaintiff without just cause and without a judicial order to do so.

89. The unlawful actions of Watkins, Borrero, and John Doe #3 violated Plaintiff's Civil Rights and directly caused Plaintiff to suffer severe emotional distress, public scorn, embarrassment, and spend five days behind bars for no valid reason.

## FOURTH CLAIM FOR RELIEF:
## PUNITIVE DAMAGES

90. Plaintiff realleges the allegations contained in Paragraphs 1 though 89.

91. Gifaldi stopped, handcuffed, and arrested Plaintiff without just cause and for the sole purpose of harassing Plaintiff on account of his race and/or national origin, with reckless and callous indifference to Plaintiff's Civil Rights.

92. The Village and the Police Department have a custom and pattern of harassing Hispanics by deliberately failing to train their employees, such as Gifaldi, on how to properly verify whether a person is lawfully present in the United States without violating the person's Civil Rights.  As a result, their employees regularly discriminate against Hispanics who are lawfully present in the United States by denying them their Constitutional rights, including due process of law.

93. Likewise, Watkins, Borrero, and John Doe #3 detained, interrogated, and incarcerated Plaintiff without just cause and for the sole purpose of harassing Plaintiff on account

10529846.4

of his race and/or national origin, with reckless and callous indifference to Plaintiff's Civil Rights.

94. CBP, John Doe #2, ICE, and John Doe #4 have a custom and practice of deliberately failing to train their respective employees on how to properly verify whether a person is lawfully present in the United States. As a result, their respective employees regularly discriminate against Hispanics who are lawfully present in the United States by denying them their Constitutional rights, including due process of law.

95. As a result, Plaintiff is entitled to Punitive Damages.

WHEREFORE, Plaintiff requests the following relief:

A. trial by jury,

B. compensatory damages in an amount to be proven at trial,

C. punitive damages,

D. declaratory, injunctive, and equitable relief;

E. costs and reasonable attorney fees;

F. the right to conform the pleadings to the evidence presented at trial; and

G. such other relief as the Court deems just and equitable.

Dated: June 22, 2007
Rochester, New York

**NIXON PEABODY LLP**

By: _____
David L. Cook
Terence L. Robinson Jr.

*Attorneys for Jonas Geronimo-Dominguez*
1100 Clinton Square
Rochester, New York 14604-1792
Telephone: (585) 263-1000
Fax: (585) 263-1600

10529846.4